## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource )
Energy Service Co., on behalf of its )
affiliates The Connecticut Light and Power )
Co., NSTAR Electric Co., and Public )  Case No. 20-_1329_
Service Co. of New Hampshire; New )
England Power Co. (d/b/a National Grid); )
New Hampshire Transmission, LLC; The )
United Illuminating Co.; Unitil Energy )
Systems, Inc. and Fitchburg Gas and )
Electric Light Co.; Vermont Transco LLC; )
and Versant Power (f/k/a Emera Maine), )
    Petitioners, )
     )
    v. )
     )
Federal Energy Regulatory Commission, )
    Respondent. )

## PETITION FOR REVIEW

Pursuant to Rule 15(a) of the Federal Rules of Appellate Procedure and 16

U.S.C. § 825*l*(b) (2018), the New England Transmission Owners ("NETOs") listed

in the caption hereby petition the Court for review of the following order of the

Federal Energy Regulatory Commission ("FERC"):

- *ISO New England Inc.*, Order Rejecting Compliance Filing, 161
  FERC ¶ 61,031 (Oct. 6, 2017).

The NETOs attach a copy of the order to this petition. As discussed below, the

NETOs hereby deem their request for rehearing of the Order Rejecting Compliance

Filing to be denied.

FERC issued the Order Rejecting Compliance Filing in proceedings involving the base return on equity ("ROE") of transmission owners in ISO New England Inc. ("ISO-NE").  The proceedings involve compliance with FERC's prior orders in *Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 531, 147 FERC ¶ 61,234 (2014), *order on paper hearing*, Opinion No. 531-A, 149 FERC ¶ 61,032 (2014), *order on reh'g*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015) and this Court's decision in *Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) that vacated FERC Opinion Nos. 531, 531-A and 531-B.  The NETOs are parties to the proceedings before FERC, sought rehearing of FERC's Order Rejecting Compliance Filing, and are aggrieved by that order.

After the NETOs timely sought rehearing of the Order Rejecting Compliance Filing on November 6, 2017, the Commission issued a tolling order on December 4, 2017 that purported to grant rehearing until the Commission issued a further order on rehearing.  *ISO New England Inc.*, Docket Nos. ER15-414-004 and EL11-66-005, Order Granting Rehearing For Further Consideration (2017).  Relying on this Court's long-standing precedent,[1] the NETOs did not deem their

---

[1] *See, e.g., Cal. Co. v. Fed. Power Comm'n*, 411 F.2d 720, 722 (D.C. Cir. 1969) ("We hold that the applications for reconsideration are validly under consideration by the Commission past the 30-day period, and that the present petitions for review are prematurely filed and should be dismissed.").  As discussed below, this Court recently overturned its prior acceptance of FERC's tolling orders (including finding that the reasoning of *California Co.* was fundamentally flawed).

request for rehearing to have been denied.  This Court recently issued its opinion in *Allegheny Defense Project v. FERC* holding that FERC's practice of using tolling orders to afford itself more time to act on rehearing does not comport with the Natural Gas Act (and thus the Federal Power Act[2]).  *See* 2020 U.S. App. LEXIS 20363, at *4 (D.C. Cir. June 30, 2020) ("We hold that, under the plain statutory language and context, such tolling orders are not the kind of action that can fend off a deemed denial and the opportunity for judicial review.").[3]  The plain language of FPA Section 313(a) provides that requests for rehearing "may be deemed to have been denied" if FERC does not act on the request for rehearing within the 30-day time period specified in the statute, 16 U.S.C. § 825*l*(a).  As the Court explained in *Allegheny*, "once thirty days pass without an enumerated action by the Commission, *the applicant may deem* its rehearing application denied and seek judicial review of the now-final agency action."  *Allegheny*, 2020 U.S. App. LEXIS 20363, at *28 (emphasis added) (citation omitted).  The NETOs accordingly now deem their request for rehearing of the Order Rejecting Compliance Filing to be denied.

---

[2] FPA Section 313(a) and NGA Section 19(a) are nearly identical.

[3] On July 23, 2020, this Court issued an Order (per curiam) directing the Clerk to withhold issuance of the mandate in *Allegheny* until at least October 5, 2020.  *See* No. 17-1098, Order (July 23, 2020).

In accordance with FRAP Rule 26.1 and Circuit Rule 26.1, each of the

NETOs attach a Corporate Disclosure Statement to this Petition.

Respectfully submitted,

**Central Maine Power Company**

 */s/ Catherine P. McCarthy*
Catherine P. McCarthy
Bracewell LLP
2001 M Street, NW, Suite 900
Washington, DC  20036-3310
cathy.mccarthy@bracewell.com


**Fitchburg Gas and Electric Light Co. and Unitil Energy Systems, Inc.**

 */s/ Gary Epler*
Gary Epler, Esq.
Chief Regulatory Counsel
Unitil Energy Systems, Inc.
6 Liberty Lane West
Hampton, NH  03842
epler@unitil.com

**Eversource Energy Service Company**

 */s/ David B. Raskin*
David B. Raskin
Johanna Dennehy
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
draskin@steptoe.com
jdennehy@steptoe.com

 */s/ Phyllis E. Lemell*
Phyllis E. Lemell
Assistant General Counsel
Lisa B. Luftig
Senior Counsel
Eversource Energy
107 Selden Street
Berlin, CT 06037
phyllis.lemell@eversource.com
lisa.luftig@eversource.com

 */s/ Mary E. Grover*
Mary E. Grover, Esq.
Eversource Energy
800 Boylston Street, P1700
Boston, MA 02199-8003
mary.grover@eversource.com

**New England Power Company d/b/a National Grid**

 */s/ Sean A. Atkins*
Sean A. Atkins
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20004
seanatkins@dwt.com

 */s/ Daniel Galaburda*
Daniel Galaburda
Assistant General Counsel & Director
National Grid USA
40 Sylvan Road
Waltham, MA 02451-1120
Daniel.Galaburda@nationalgrid.com

**The United Illuminating Company**

 */s/ Catherine P. McCarthy*
Catherine P. McCarthy
Bracewell LLP
2001 M Street, NW, Suite 900
Washington, DC  20036-3310
cathy.mccarthy@bracewell.com

**New Hampshire Transmission LLC**

 */s/ Justin Moeller*
Justin Moeller
Senior FERC Counsel
NextEra Energy, Inc.
801 Pennsylvania Avenue, NW
Suite 220
Washington, DC 20004
justin.moeller@nee.com

**Vermont Transco LLC**

 */s/ S. Mark Sciarrotta*
S. Mark Sciarrotta
Assistant General Counsel
Vermont Electric Power Company, Inc.,
as Manager of Vermont Transco LLC
366 Pinnacle Ridge Road
Rutland, VT 05701
msciarrotta@velco.com

**Versant Power (f/k/a Emera Maine)**

 */s/ Jeffrey M. Jakubiak*
Jeffrey M. Jakubiak
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
jjakubiak@gibsondunn.com

Dated:  August 28, 2020

## UNITED STATES COURT OF APPEALS FOR THE
## DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| Central Maine Power Co.; Eversource | ) | |
| Energy Service Co., on behalf of its | ) | |
| affiliates The Connecticut Light and Power | ) | |
| Co., NSTAR Electric Co., and Public | ) | Case No. 20-_____ |
| Service Co. of New Hampshire; New | ) | |
| England Power Co. (d/b/a National Grid); | ) | |
| New Hampshire Transmission, LLC; The | ) | |
| United Illuminating Co.; Unitil Energy | ) | |
| Systems, Inc. and Fitchburg Gas and | ) | |
| Electric Light Co.; Vermont Transco LLC; | ) | |
| and Versant Power (f/k/a Emera Maine), | ) | |
|     Petitioners, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
|     Respondent. | ) | |

## CORPORATE DISCLOSURE STATEMENT OF
## CENTRAL MAINE POWER COMPANY AND THE
## UNITED ILLUMINATING COMPANY

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Petitioners Central Maine Power Company ("CMP") and The United Illuminating Company ("UI") provide their corporate disclosure statement as petitioners in this case.

CMP is a Maine corporation primarily engaged in transmitting and distributing electricity generated by others to retail customers in Maine with its principal place of business located at 83 Edison Drive, Augusta, Maine 04336. CMP serves more than 600,000 customers in central and southern Maine. CMP is

a transmission owner in New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Inc. Transmission, Markets and Services Tariff.

UI is a specially chartered Connecticut corporation. UI provides electric transmission and distribution services in the State of Connecticut. In addition, UI owns a 50% interest in an entity which indirectly owns two peaking generating plants. UI is a transmission owner in New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Inc. Transmission, Markets and Services Tariff.

CMP is a direct and wholly-owned subsidiary of CMP Group, Inc., a Maine corporation, which, in turn, is a direct and wholly-owned subsidiary of AVANGRID Networks, Inc. AVANGRID Networks, Inc., a Maine corporation, is a direct and wholly-owned subsidiary of AVANGRID, Inc., a New York corporation. UI is a wholly-owned subsidiary of UIL Holdings Corporation, a Connecticut corporation, which, in turn, is a direct and wholly-owned subsidiary of AVANGRID Networks, Inc. AVANGRID Networks, Inc., a Maine corporation, is a direct and wholly-owned subsidiary of AVANGRID, Inc. AVANGRID, Inc. is publicly traded on the New York Stock Exchange with Iberdrola, S.A. holding an 81.5% ownership interest in AVANGRID, Inc. Iberdrola S.A. is publicly traded

on the Madrid Stock Exchange.  No publicly-held company has a ten percent or greater ownership interest in Iberdrola, S.A.

Respectfully submitted,

*/s/ Catherine P. McCarthy*
Catherine P. McCarthy
Bracewell LLP
2001 M Street, N.W., Suite 900
Washington, D.C. 20036
(202) 828-5839
cathy.mccarthy@bracewell.com

*Attorney for Central Maine Power Company and The United Illuminating Company*

Dated:  August 28, 2020

## UNITED STATES COURT OF APPEALS FOR THE
## DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource          )
Energy Service Co., on behalf of its          )
affiliates The Connecticut Light and Power  )
Co., NSTAR Electric Co., and Public          )          Case No. 20-_____
Service Co. of New Hampshire; New          )
England Power Co. (d/b/a National Grid);   )
New Hampshire Transmission, LLC; The     )
United Illuminating Co.; Unitil Energy       )
Systems, Inc. and Fitchburg Gas and          )
Electric Light Co.; Vermont Transco LLC;  )
and Versant Power (f/k/a Emera Maine),     )
     Petitioners,          )
               )
     v.          )
               )
Federal Energy Regulatory Commission,     )
     Respondent.          )


## CORPORATE DISCLOSURE STATEMENT OF
## EVERSOURCE ENERGY SERVICE COMPANY

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule

26.1 of this Court, Petitioner Eversource Energy Service Company ("Eversource

Service")discloses the following:

Eversource Service is a wholly owned service company subsidiary of

Eversource Energy ("Eversource[1]"), a registered holding company under the Public

---

[1] Eversource was formerly known as Northeast Utilities.  On April 30, 2015, Northeast Utilities' legal name was changed to Eversource Energy.

Utility Holding Company Act of 1935, 15 U.S.C § 79a, *et seq.*  The common shares of Eversource are publicly held.  Eversource, through its named subsidiaries, provides electric transmission and distribution services and engages in wholesale and retail sales of electric energy.

Eversource Service provides management and professional services to the subsidiaries of Eversource.  In this proceeding, Eversource Service is acting on behalf of its electric utility company affiliates, which are:  The Connecticut Light and Power Company, Public Service Company of New Hampshire, and NSTAR Electric Company[2] (the "Eversource Companies").

The Eversource Companies are electric transmission owners in New England and provide electric transmission services pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.  The Eversource Companies are wholly owned subsidiaries of Eversource.  Two of the Eversource Companies, The Connecticut Light and Power Company and NSTAR Electric Company, have issued preferred stock to the public.

---

[2] Western Massachusetts Electric Company, which was a party of record in the FERC proceedings, merged into its affiliate NSTAR Electric Company on December 31, 2017.

The common shares of Eversource are traded on the New York Stock Exchange under the symbol "ES."  Mutual funds managed by The Vanguard Group, Inc. own greater than 10% of the Company's common shares.

Respectfully submitted,

 */s/ David B. Raskin*
David B. Raskin
Johanna Dennehy
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
draskin@steptoe.com
jdennehy@steptoe.com

*Attorneys for Eversource Energy Service Co., on behalf of The Connecticut Light and Power Co., NSTAR Electric Co., and Public Service Co. of New Hampshire*

Dated:  August 28, 2020

**UNITED STATES COURT OF APPEALS FOR THE**
**DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Central Maine Power Co.; Eversource | ) | |
| Energy Service Co., on behalf of its | ) | |
| affiliates The Connecticut Light and Power | ) | |
| Co., NSTAR Electric Co., and Public | ) | Case No. 20-_____ |
| Service Co. of New Hampshire; New | ) | |
| England Power Co. (d/b/a National Grid); | ) | |
| New Hampshire Transmission, LLC; The | ) | |
| United Illuminating Co.; Unitil Energy | ) | |
| Systems, Inc. and Fitchburg Gas and | ) | |
| Electric Light Co.; Vermont Transco LLC; | ) | |
| and Versant Power (f/k/a Emera Maine), | ) | |
|     Petitioners, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
|     Respondent. | ) | |

**CORPORATE DISCLOSURE STATEMENT OF**
**NEW ENGLAND POWER COMPANY**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule

26.1 of this Court, Petitioner New England Power Company d/b/a National Grid

discloses the following:

All of the outstanding shares of common stock of New England Power

Company are owned by National Grid USA.  Relevant to this proceeding, National

Grid USA, through its subsidiaries, provides transmission, distribution and

generation services and engages in wholesale and retail sales of electric energy.

National Grid USA, through its subsidiaries, is a transmission owner in New

England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

All of the outstanding shares of common stock of National Grid USA are owned by National Grid North America Inc.  All of the outstanding shares of common stock of National Grid North America Inc. are owned by National Grid (US) Partner 1 Limited.  All of the outstanding ordinary shares of National Grid (US) Partner 1 Limited are owned by National Grid (US) Investments 4 Limited. All of the outstanding ordinary shares of National Grid (US) Investments 4 Limited are owned by National Grid (US) Holdings Limited.  All of the outstanding ordinary shares of National Grid (US) Holdings Limited are owned by National Grid plc. National Grid plc is a public limited company organized under the laws of England and Wales, with ordinary shares listed on the London Stock Exchange, and American Depositary Shares listed on the New York Stock Exchange.

Respectfully submitted,

 */s/ Sean A. Atkins*
Sean A. Atkins
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20004
(202) 973-4294
seanatkins@dwt.com

*Attorney for New England Power Company*

Dated:  August 28, 2020

## UNITED STATES COURT OF APPEALS FOR THE
## DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource )
Energy Service Co., on behalf of its )
affiliates The Connecticut Light and Power )
Co., NSTAR Electric Co., and Public )          Case No. 20-_____
Service Co. of New Hampshire; New )
England Power Co. (d/b/a National Grid); )
New Hampshire Transmission, LLC; The )
United Illuminating Co.; Unitil Energy )
Systems, Inc. and Fitchburg Gas and )
Electric Light Co.; Vermont Transco LLC; )
and Versant Power (f/k/a Emera Maine), )
  Petitioners, )
           )
  v. )
           )
Federal Energy Regulatory Commission, )
  Respondent. )

## CORPORATE DISCLOSURE STATEMENT OF
## NEW HAMPSHIRE TRANSMISSION, LLC

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule

26.1 of this Court, Petitioner New Hampshire Transmission LLC discloses the

following:

New Hampshire Transmission, LLC ("NHT") is a public utility located in

Seabrook, New Hampshire.  NHT owns regional transmission facilities that are

under the operational control of ISO New England Inc.  NHT is a direct, wholly-

owned subsidiary of NextEra Energy Transmission, LLC, which in turn is a direct,

wholly-owned subsidiary of NextEra Energy Infrastructure, LLC, which is a direct,

wholly-owned subsidiary of NextEra Energy Capital Holdings, Inc.  NextEra

Energy Capital Holdings, Inc. is a wholly-owned subsidiary of NextEra Energy,

Inc. ("NextEra").  NextEra is a publicly-held company with shares listed on the

New York Stock Exchange.  No publicly-held company has a ten percent or

greater ownership interest in NextEra.

Respectfully submitted,

*/s/ Justin Moeller*
Justin Moeller
Senior FERC Counsel
NextEra Energy, Inc.
801 Pennsylvania Ave., N.W.
Suite 220
Washington, D.C. 20004
(202) 349-3346
Justin.Moeller@nexteraenergy.com

*Attorney for*
*New Hampshire Transmission, LLC*

Dated:  August 28, 2020

## UNITED STATES COURT OF APPEALS FOR THE
## DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource )
Energy Service Co., on behalf of its )
affiliates The Connecticut Light and Power )
Co., NSTAR Electric Co., and Public )          Case No. 20-_____
Service Co. of New Hampshire; New )
England Power Co. (d/b/a National Grid); )
New Hampshire Transmission, LLC; The )
United Illuminating Co.; Unitil Energy )
Systems, Inc. and Fitchburg Gas and )
Electric Light Co.; Vermont Transco LLC; )
and Versant Power (f/k/a Emera Maine), )
    Petitioners, )
     )
    v. )
     )
Federal Energy Regulatory Commission, )
    Respondent. )

## CORPORATE DISCLOSURE STATEMENT OF
## FITCHBURG GAS AND ELECTRIC LIGHT
## COMPANY AND UNITIL ENERGY SYSTEMS, INC.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule

26.1 of this Court, Petitioners Fitchburg Gas and Electric Light Company

("Fitchburg") and Unitil Energy Systems, Inc. ("UES") disclose the following:

Fitchburg is a Massachusetts corporation which provides retail natural gas

and electric service in the Fitchburg area of north central Massachusetts.  Fitchburg

is a transmission owner in New England and provides electric transmission

services pursuant to the rates, terms and conditions of the ISO New England

Transmission, Markets and Services Tariff.  UES is a New Hampshire corporation

which provides electric service in the southeastern seacoast and capital regions of New Hampshire. UES is a transmission owner in New England and provides electric transmission services pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

Fitchburg and UES are wholly owned subsidiaries of Unitil Corporation. Unitil Corporation is a registered holding company under the Public Utility Holding Company Act of 1935, 15 U.S.C § 79a, *et seq.*, incorporated under the laws of the State of New Hampshire. The common shares of Unitil Corporation are publicly held and listed on the New York Stock Exchange. There are no parent corporations or publicly-held companies that own a ten percent or greater ownership in Unitil Corporation.

Respectfully submitted,

*/s/ Gary Epler*
Gary Epler, Esq.
Chief Regulatory Counsel
UNITIL SERVICE CORP
6 Liberty Lane West
Hampton, NH 03842
(603) 773-6440
epler@unitil.com

*Attorney for Unitil Energy Systems, Inc. and Fitchburg Gas & Electric Light Company*

Dated: August 28, 2020

# UNITED STATES COURT OF APPEALS FOR THE
# DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource )
Energy Service Co., on behalf of its )
affiliates The Connecticut Light and Power )
Co., NSTAR Electric Co., and Public )  Case No. 20-_____
Service Co. of New Hampshire; New )
England Power Co. (d/b/a National Grid); )
New Hampshire Transmission, LLC; The )
United Illuminating Co.; Unitil Energy )
Systems, Inc. and Fitchburg Gas and )
Electric Light Co.; Vermont Transco LLC; )
and Versant Power (f/k/a Emera Maine), )
  Petitioners, )
   )
  v. )
   )
Federal Energy Regulatory Commission, )
  Respondent. )

# CORPORATE DISCLOSURE STATEMENT OF
# VERMONT TRANSCO LLC

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Petitioner Vermont Transco LLC discloses the following:

Vermont Transco LLC is a manager-managed Vermont limited liability company that owns electric transmission facilities in the state of Vermont and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

Vermont Transco LLC is not publicly traded, has no parent corporation, and no publicly held company owns ten percent or more of it.

Respectfully submitted,

*/s/ S. Mark Sciarrotta*
S. Mark Sciarrotta
Assistant General Counsel
Vermont Electric Power Company, Inc., as
Manager of Vermont Transco LLC
366 Pinnacle Ridge Road
Rutland, VT 05701 (802) 770-6339
msciarrotta@velco.com

*Attorney for Vermont Transco LLC*

Dated:  August 28, 2020

# UNITED STATES COURT OF APPEALS FOR THE
# DISTRICT OF COLUMBIA CIRCUIT

Central Maine Power Co.; Eversource )
Energy Service Co., on behalf of its )
affiliates The Connecticut Light and Power )
Co., NSTAR Electric Co., and Public )          Case No. 20-_____
Service Co. of New Hampshire; New )
England Power Co. (d/b/a National Grid); )
New Hampshire Transmission, LLC; The )
United Illuminating Co.; Unitil Energy )
Systems, Inc. and Fitchburg Gas and )
Electric Light Co.; Vermont Transco LLC; )
and Versant Power (f/k/a Emera Maine), )
    Petitioners, )
     )
    v. )
     )
Federal Energy Regulatory Commission, )
    Respondent. )

## CORPORATE DISCLOSURE STATEMENT OF
## VERSANT POWER

    Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Petitioner Versant Power (f/k/a Emera Maine)[1] discloses the following:

    Versant Power, a Maine corporation, is a direct subsidiary of BHE Holdings Inc., which holds all of its issued and outstanding common stock.[2]  BHE Holdings

---

[1] Emera Maine changed its name to Versant Power on May 11, 2020.

[2] A small amount of preferred shares of Versant Power, which convey voting rights, are held by unaffiliated third parties. These preferred shares constitute approximately 0.45 percent of the outstanding voting interests in Versant Power.

Inc., in turn, is a direct wholly-owned subsidiary of 3456 Inc., which is a direct wholly-owned subsidiary of 2181206 Alberta Ltd., which is a directly wholly-owned subsidiary of ENMAX Corporation ("ENMAX"), a Calgary-based utility holding company that is wholly-owned by the City of Calgary, Alberta.

Versant Power provides electric transmission and distribution services in the State of Maine.  In addition, Versant Power purchases limited amounts of electric energy from unaffiliated generating facilities that it resells into the markets operated by ISO New England Inc. ("ISO New England").  Versant Power is a transmission-owning member of ISO New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

Respectfully submitted,

*/s/ Jeffrey M. Jakubiak*
Jeffrey M. Jakubiak
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
jjakubiak@gibsondunn.com

*Attorney for Versant Power (f/k/a Emera Maine)*

Dated:  August 28, 2020

**Order To Be Reviewed**

161 FERC ¶ 61,031
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
Cheryl A. LaFleur, and Robert F. Powelson.

| | |
|---|---|
| ISO New England Inc. | Docket Nos. ER15-414-002 |
| Martha Coakley, Attorney General of the Commonwealth of Massachusetts, *et al*. | EL11-66-004 |
| v. | |
| Bangor Hydro-Electric Company, *et al*. | |

ORDER REJECTING COMPLIANCE FILING

(Issued October 6, 2017)

1.      On June 5, 2017, the New England Transmission Owners (NETOs) made a filing to reinstate their previous Commission-allowed returns on equity (ROE), which were lowered pursuant to a now-vacated Commission order.  In this order, we reject NETOs filing and require NETOs to continue collecting their ROEs currently on file, subject to a future Commission order.

## I.      **Background**

### A.      **Opinion No. 531 *et seq.***

2.      On September 30, 2011, the Commission received the first of what has become four complaints under section 206 of the Federal Power Act[1] alleging that the return

---

[1] 16 U.S.C. § 824e (2012).

on equity (ROE) that NETOs are permitted to collect is unjust and unreasonable.[2] The complainants fell into two general groups. One group—the Complainant-Aligned Parties or CAPs—consisted of state attorneys general, state public utility commissions, state consumer advocates, and certain transmission customers.[3] The second group—the Eastern Massachusetts Consumer-Owned Systems or EMCOS—included various transmission customers.[4] We will refer to both groups collectively as "Customers." At the time of the original complaint, NETOs' were allowed to collect a base ROE of 11.14 percent and their total ROE—i.e., the base ROE plus any ROE adders approved by the Commission—was not permitted to exceed 13.5 percent.

---

[2] NETOs are: Emera Maine (f/k/a Bangor Hydro Electric Company); Central Maine Power Company; Eversource Energy Service Company (f/k/a Northeast Utilities Service Company) on behalf of: The Connecticut Light and Power Company, NSTAR Electric Company, Western Massachusetts Electric Company, and Public Service Company of New Hampshire; New England Power Company d/b/a National Grid; New Hampshire Transmission LLC; The United Illuminating Company; Unitil Energy Systems, Inc. and Fitchburg Gas and Electric Light Company; and Vermont Transco LLC.

[3] CAPs are: the state utility commissions of Connecticut, Massachusetts, New Hampshire, and Rhode Island; the Attorneys General of the State of Connecticut and of the Commonwealth of Massachusetts; Connecticut Office of Consumer Counsel; Maine Office of the Public Advocate; New Hampshire Office of Consumer Advocate; Massachusetts Municipal Wholesale Electric Utility Company; New Hampshire Electric Cooperative; Associated Industries of Massachusetts; and the Industrial Energy Consumer Group.

[4] EMCOS are: Belmont Municipal Light Department; Braintree Electric Light Department; Concord Municipal Light Plant; Georgetown Municipal Light Department; Groveland Electric Light Department; Hingham Municipal Lighting Plant; Littleton Electric Light & Water Department; Middleborough Gas & Electric Department; Middleton Electric Light Department; Reading Municipal Light Department; Rowley Municipal Lighting Plant; Taunton Municipal Lighting Plant; and Wellesley Municipal Light Plant. The EMCOs did not file a complaint in the Docket No. EL11-66-000 proceeding, but intervened in support of the CAPs' complaint.

3.      Following a full hearing before an administrative law judge, the Commission issued Opinion No. 531.[5]  As relevant here, Opinion No. 531 tentatively found that a discounted cash flow (DCF) analysis of a proxy group of companies comparable to NETOs produced a zone of reasonableness of 7.04 percent to 11.74 percent.[6]  The Commission also concluded that NETOs' new just and reasonable ROE should be set at the upper midpoint of the zone of reasonableness—i.e., halfway between the midpoint and the top of the zone of reasonableness.  In reaching that conclusion, the Commission held that evidence of unusual capital market conditions, principally the evidence of low interest rates, left the Commission less confident that a mechanical application of the DCF methodology would produce a just and reasonable ROE.[7]  As a result, the Commission considered three alternative financial models as well as the ROEs approved by state public utility commissions for investment in electric infrastructure under their jurisdiction.  Based on that evidence, the Commission concluded that an ROE above the midpoint of the zone of reasonableness was appropriate and that the midpoint of the upper half of the zone of reasonableness would be just and reasonable.[8]

4.      Following a paper hearing concerning the long-term growth projection to use in the DCF analysis, the Commission in Opinion No. 531-A concluded that the upper midpoint of the zone of reasonableness was 10.57 percent.  The Commission, therefore, found pursuant to FPA section 206 that NETOs' existing ROE of 11.14 percent was unjust and unreasonable and that a just and reasonable base ROE is 10.57 percent.[9]  The Commission also capped NETOs' total ROE at 11.74 percent, the upper bound of the

---

[5] *Coakley v. Bangor Hydro-Elec. Co*., Opinion No. 531, 147 FERC ¶ 61,234 (2014) (Opinion No. 531), *order on paper hearing*, Opinion No. 531-A, 149 FERC ¶ 61,032 (2014) (Opinion No. 531-A), *order on reh'g*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015).

[6] *Id.* P 125.

[7] *Id.* P 142.

[8] *Id.* P 146-148.

[9] Opinion No. 531-A, 149 FERC ¶ 61,032 at P 10.

zone of reasonableness.[10]  The Commission required NETOs' to submit a compliance filing to implement their new ROEs effective October 16, 2014—the date of Opinion No. 531-A.[11]

### B.    *Emera Maine v. FERC*

5.    Both NETOs and Customers petitioned for review of Opinion No. 531 *et seq.* before the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit).  NETOs and Customers advanced several arguments, only two of which are relevant here.  First, NETOs argued that the Commission did not satisfy the first prong of the FPA section 206 inquiry because it did not adequately demonstrate that NETOs' existing 11.14 percent base ROE was unjust and unreasonable.  NETOs argued that because that 11.14 percent figure was within the zone of reasonableness produced by the DCF, the Commission erred in finding their existing ROE unjust and unreasonable.  NETOs further argued that even if a base ROE within the DCF-produced zone of reasonableness could be unjust and unreasonable, the Commission's approach of comparing the existing base ROE to the just and reasonable ROE that the Commission would set using the data from the study period compiled by the ALJ was insufficient to show that their existing base ROE was unjust and unreasonable.

6.    Second, Customers argued that the Commission did not satisfy the second prong of the FPA section 206 inquiry because the Commission had not adequately shown that the 10.57 percent base ROE that it set in Opinion No. 531 was just and reasonable.  Customers argued that the Commission had not adequately shown that the purportedly unusual capital markets and the alternative methodologies justified a base ROE above the midpoint of the zone of reasonableness.  They further argued that, in any case, the Commission had not demonstrated that 10.57 percent was such an appropriate base ROE.[12]

---

[10] *Id.* P 11.

[11] NETOs Compliance Filing implementing the ROEs established in *Emera Maine* was assigned to Docket No. ER15-414.  NETOs did not appeal the Commission's acceptance of their compliance filing.

[12] NETOs and Customers raised additional arguments regarding other conclusions that the Commission reached in Opinion No. 531.  The D.C. Circuit did not reach these arguments and, for that reason, we need not summarize them further here.

7.     In *Emera Maine v. FERC*,[13] the D.C. Circuit agreed with both NETOs and Customers and vacated and remanded Opinion No. 531 *et seq.* to the Commission. As an initial matter, the Court rejected NETOs' argument that an ROE within the DCF-produced zone of reasonableness could not be deemed unjust and unreasonable. The Court explained that the zone of reasonableness established by the DCF is not "coextensive" with the "statutory" zone of reasonableness envisioned by the FPA.[14] Accordingly, the Court concluded that the fact that NETOs' existing ROE fell within the zone of reasonableness produced by the DCF did not necessarily indicate that it was just and reasonable for the purposes of the FPA.[15]

8.     Nevertheless, the Court agreed with NETOs that the Commission had not adequately shown that their existing ROE was unjust and unreasonable. The Court explained that the FPA's statutory "zone of reasonableness creates a broad range of potentially lawful ROEs rather than a single just and reasonable ROE."[16] Thus, the fact that NETOs' existing ROE did not equal the ROE that the Commission would have set using the current DCF inputs did not indicate that their existing ROE fell outside the statutory zone of reasonableness. The Court, therefore, concluded that the Commission had not adequately met its burden under FPA section 206 to show that NETOs' existing ROE was unjust and unreasonable.[17]

9.     The Court also agreed with Customers that the Commission had not adequately shown that the 10.57 percent ROE it set was just and reasonable. Although recognizing that the Commission has the authority "to make 'pragmatic adjustments' to a utility's ROE based on the 'particular circumstances' of a case," the Court nevertheless concluded that the Commission had not explained why setting the ROE at the upper midpoint was just and reasonable.[18] The Court noted, in particular, the Commission relied on the

---

[13] 854 F.3d 9 (D.C. Cir. 2017).

[14] *Id.* at 22-23.

[15] *Id.* at 23.

[16] *Id.* at 26.

[17] *Id.* ("FERC concluded that the existing 11.14 percent base ROE was unlawful solely because it had determined that 10.57 percent, which was a numerical value below the existing numerical value, was a just and reasonable base ROE. That conclusion, without any further explanation, is insufficient to prove that Transmission Owners' existing base ROE was unlawful." (internal citations and quotations marks omitted)).

[18] *Id.* at 27 (quoting *FPC v. Nat. Gas Pipeline Co.*, 315 U.S. 575, 586 (1942)).

alternative models and state-regulated ROEs to support an ROE *above* the midpoint, but that it did not rely on that evidence to support an ROE *at* the upper midpoint.  Because the Court found that the Commission had not pointed to record evidence supporting the specific point at which it set NETOs' ROE, the Court held that the Commission had not articulated the "rational connection" between the evidence and the rate that the FPA demands.[19]

10.     Based on those two conclusions—that the Commission had not met its burden either under the first or the second prong of FPA section 206—the Court vacated and remanded Opinion No. 531 *et seq.*[20]

## II.     **The Parties' Pleadings**

### A.      **NETOs' Amended Compliance Filing**

11.     On June 5, 2017, NETOs submitted the instant filing, which they style as an amendment to the compliance filing they made following Opinion No. 531-A.[21]  NETOs describe the filing as "documenting the legal effect of the Court's decision in *Emera Maine v. FERC*."[22]  They assert that because the *Emera Maine* decision vacated Opinion No. 531, the Court's opinion had the effect of "return[ing] the parties to the *status quo ante*," which, NETOs contend, means allowing them to collect their pre-Opinion No. 531 ROEs.[23]  In support of that contention, NETOs' argue that "[o]nce the [Court's] mandate [in *Emera Maine*] . . . issu[ed], the only lawful ROEs to be used for the NETOs' transmission rates . . . are those that were in effect prior to the issuance of Opinion No. 531-A, including a base ROE of 11.14 percent."[24]  NETOs rely on a series of cases from the D.C. Circuit, which NETOs argue stand for the proposition that a Court's vacatur of an agency's order automatically restores the parties to the *status quo ante* prior

---

[19] *Id.* at 28-30.

[20] *Id.* at 30.

[21] NETOs Amended Compliance Filing at 1.

[22] *Id.* at 5.

[23] *Id.* at 4.

[24] *Id.*

to the vacated order.[25]  Based on those cases, NETOs contend that the return to their pre-Opinion No. 531 ROEs "must occur as a matter of law and require[s] no action from the Commission."[26]

12.     Nevertheless, NETOs recognize that, as a result of the compliance filing they made following Opinion No. 531, the rates on file with the Commission have a base ROE of 10.57 percent and an ROE cap of 11.74 percent.  As a result, they have made the instant filing to "document the legal effect" of *Emera Maine*.  NETOs state that, because they made this filing during a period in which the Commission was operating without a quorum, they will not immediately begin collecting their pre-Opinion No. 531 ROEs in order to give "the Commission . . . the opportunity to review this filing before any change in billing takes effect."[27]  NETOs state that they will not make any billing changes until 60 days after the Commission has a quorum again.[28]  However, NETOs state that they will use the date of issuance of the D.C. Circuit's mandate as the effective date for the return to their pre-Opinion No. 531 rates.[29]

13.     Finally, NETOs state that "in light of the uncertainty and complexity associated with potential refunds and surcharges" and in order to "reduc[e the] administrative burden" associated with resolving the *Emera Maine* remand and the three other pending complaints against NETOs' ROE, NETOs believe that whether refunds and/or surcharges are appropriate for the period prior to the issuance of the Court's mandate is an issue best decided after the Commission issues its order on remand from *Emera Maine*.[30]  Nevertheless, NETOs state that they reserve their rights to seek surcharges for the period prior to the issuance of the Court's mandate.  In so doing, NETOs cite the D.C. Circuit's

---

[25] *Id.* (citing *Transcontinental Gas Pipe Line Corp. v. FPC*, 488 F.3d 1325, 1330 (D.C. Cir. 1973), *Action on Smoking and Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797-98 (D.C. Cir. 1983), and *Indep. U.S. Tankers Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987)).

[26] *Id.* at 5.

[27] *Id.*

[28] The Commission regained a quorum on August 10, 2017.  Sixty days after that date would be October 9, 2017.

[29] *Id.*  NETOs' Filing anticipated that the D.C. Circuit's mandate would issue on June 6, 2017.  *Id.*  The mandate in fact issued on June 8, 2017.

[30] *Id.* at 6-7.

decision in *City of Anaheim v. FERC*[31] for the proposition that any new ROEs set in the Commission's order on remand can be effective only for the fifteen-month refund period and prospectively from the date of the order on remand.[32]

## B.     Customers' Responses

14.     Both EMCOS and CAPs submitted responses to NETOs' filing.[33]  CAPs argued that the October 2014 compliance filing in which NETOs implemented the 10.57 percent base ROE and the 11.74 ROE cap required by Opinion No. 531-A was not before the Court in *Emera Maine* and, therefore, could not be within the scope of the Court's mandate.  CAPs state that "'issues that [are] not decided by the appellate court and that are thus outside the scope of the mandate are not affected by the mandate.'"[34]  CAPs note that the issue of what action the Commission should take regarding NETOs' October 2014 compliance filing "'was not briefed by the parties nor discussed in the panel opinion.'"[35]  Accordingly, CAPs contend that because the October 2014 compliance filing was not before the Court, it could not have been vacated by the Court

-----

[31] 558 F.3d 521, 523-24 (D.C. Cir. 2009).

[32] NETOs Amended Compliance Filing at 6 n.18; *see* 16 U.S.C. § 824e(b) (2012) (establishing the fifteen-month refund period for section 206 proceedings).

[33] In addition to the arguments summarized below, both EMCOS and CAPs urged the Commission to summarily reject NETOs' Filing without reaching the merits.  CAPs Response at 5-9; EMCOS Response at 3-6.  However, because, as discussed below, we reject NETOs' Filing on the merits, the arguments that we should summarily reject NETOs' Filing are moot and we need not further discuss them here.  For similar reasons we need not address EMCOS's subsequent letter to the Director of the Office of Energy Market Regulation—East in which they reiterated their argument that NETOs' Filing should be summarily rejected or NETOs' Response to that letter.   Finally, we also need not address EMCOS's argument that the Commission should not recharacterize NETOs' Filing as being pursuant to section 205 of the FPA or their protest in the event that the Commission might do so.  EMCOS Response at 6-9.  Because NETOs agree that their filing should not be recharacterized as a section 205 filing, NETOs Answer at 13 n.33, and because we do decline to recharacterize it as such, there is no need to discuss those arguments any further either.

[34] CAPs Response at 9 (quoting *New England Power Co. v. FERC*, 533 F.3d 55, 59 (1st Cir. 2008) (citations omitted)).

[35] *Id.* at 10 (quoting *New England Power Co.*, 533 F.3d at 58 (citation omitted)).

20171006-3028 FERC PDF (Unofficial) 10/06/2017

and, therefore, the rates established in the October 2014 compliance filing remain the only rate on file for NETOs' ROE.

15.     CAPs further argue that nothing in *Emera Maine* indicates that NETOS are entitled to collect a 11.14 percent base ROE or an overall ROE above the 11.74 percent ROE cap set in Opinion No. 531-A. They explain that the Court rejected NETOS' argument that their existing 11.14 percent base ROE was necessarily just and reasonable because it fell within the DCF-produced zone of reasonableness. CAPs contend that the Court left it to the Commission to determine what action to take regarding NETOS' prevailing ROEs in further proceedings on remand.[36]

16.     Turning to the cases on which NETOS rely for the proposition that the vacatur automatically restores the *status quo ante*, CAPs argue that none of those cases address the impact of a court's decision on proceedings that were not subject to the Court's review. Furthermore, CAPs argue that NETOS' reliance on *Transcontinental*—in which the Court directed the Commission to take certain action to restore the *status quo ante* "as quickly as possible" on remand[37]—only proves their point because "*Emera Maine* includes no comparable directive."[38] CAPs also argue that NETOS are not actually restoring the *status quo ante* because their filing would restore their pre-Opinion No. 531 ROEs only prospectively from the date of the mandate and not for the prior period.[39]

17.     Finally, CAPs argue that it would be more administratively efficient for the Commission to revisit its order on NETOS' October 2014 compliance filing as part of the Commission's order addressing the Court's remand in *Emera Maine*. CAPs contend that whatever rate(s) the Commission establishes on remand will apply both for the refund period and for the entire period following Opinion No. 531-A and that permitting NETOS to collect different ROEs during those periods would needlessly "exacerbate the complexity associated with determining refunds/surcharges" in the Commission's order on remand.[40] They note that, due to the complexity of determining appropriate refunds,

---

[36] *Id.*

[37] *Transcontinental*, 488 F.2d at 1331.

[38] CAPs Response at 11.

[39] *Id.* at 11-12.

[40] *Id.* at 12-14.

NETOs required an extension of time in which to calculate the refunds required following Opinion No. 531-A.[41]

18.     EMCOS make many similar arguments.  In addition, EMCOS also disagree with NETOs' contention that the legal effect of the *Emera Maine* decision is to automatically reinstate NETOs' pre-Opinion No. 531 ROEs.  Relying on the Commission's order in *Gulf States Utilities*, they argue that the legal effect of a court's remand in circumstances like these is to restore jurisdiction to the agency so that it may reconsider its decision in accordance with applicable law.[42]  They further argue that vacatur does not necessarily reinstate the pre-existing rates because the issue of what rate is in effect is "an essentially administrative function. . . . [which] Congress empowered the Commission, not the Courts" to decide.[43]  EMCOS conclude, therefore, that the ROEs established in Opinion No. 531-A must remain in effect until the Commission takes action to change them.

### C.     NETOs' Answer

19.     In their answer to CAPs' and EMCOS's responses, NETOs contend that their arguments would have the effect of "treat[ing] *Emera Maine* as if the Court had not vacated [Opinion No. 531], but merely remanded it."[44]  NETOs' argue that, if the Court had intended the Commission to leave Opinion No. 531 in effect during the pendency of the remand, the Court would have instead remanded it without vacatur.  NETOs further note that the D.C. Circuit has developed a body of case law for determining whether to remand with or without vacatur, suggesting that the Court views the difference between those remedies as a meaningful one and one that the Commission cannot disregard.[45]

20.     NETOs contend that the proceedings relied upon in Customers' answers are inapt.  In particular, they note that *Gulf States Utilities* involved an instance in which a utility

---

[41] *Id.* at 14.

[42] EMCOS Response at 4 (citing *Gulf States Utilities*, 67 FERC ¶ 61,035, at 61,108-61,109 (1994)).

[43] *Id.*

[44] NETOs Answer at 2.  NETOs also argue that, as a result of the vacatur, the only legally valid Commission order is the one authorizing their pre-Opinion No. 531 ROEs and that the instant filing is properly characterized as a compliance filing because it is undoing the effect of the now-vacated order.  *Id.* at 12-14.

[45] *Id.* at 4-6.

made a new FPA section 205 filing to implement its interpretation of the Court's decision on remand and that the Commission rejected that attempt because it concluded that it is inappropriate for a party to commence to implement its interpretation of a Court's decision before the Commission can act on the remand from that decision.[46]  NETOs contend that here, by contrast, they are merely seeking to return to the rates that had been previously in effect while the Commission determines how to respond to the remand. NETOs further contend that other cases and proceedings relied upon by EMCOS and CAPs are inapt because they involved agency action that was not vacated or presented other circumstances not present in this proceeding.[47]

21.     NETOs contend that the fact that the docket containing their compliance filing was not before the Court in *Emera Maine* "does not change the impact of the Court's vacatur."[48]  They contend that the Commission's practice of creating a separate new docket for certain compliance filings cannot "supersede[]" the Court's authority to vacate orders.  As a result, they contend that, for the purposes of determining the scope of vacatur, it should not matter whether a filing that was required by a now-vacated order was made in the same docket as that vacated order or a different one.[49]

22.     Finally, NETOs argue that their decision not to seek surcharges for the period preceding the issuance of the Court's mandate is appropriate and in no way inconsistent with their interpretation of *Emera Maine*.  NETOs reiterate their position that it would be more administratively efficient to address appropriate surcharges for the period prior to the issuance of the mandate after the Commission issues its order on remand rather than seeking surcharges now only to potentially issue refunds of those surcharges in the future. NETOs state, however, that if the Commission believes that returning to their pre-Opinion No. 531 rates only prospectively is inconsistent with the Court's vacatur, they will seek surcharges as well.[50]  In any case, NETOs note that the manner in which they seek surcharges "in no way changes the legal effect of the Court's decision."[51]

---

[46] *Id.* at 7.

[47] *Id.* at 6-12.

[48] *Id.* at 16.

[49] *Id.* at 17-18.

[50] *Id.* at 14-15.

[51] *Id.* at 15-16.

### III.    Commission Determination

#### A.    Procedural Matters

23.    Rule 213(a)(2) of the Commission's Rules of Practice and Procedure prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We will accept NETOs' answer because it has provided information that assisted us in our decision-making process.

#### B.    Substantive Matters

24.    We reject NETOs' amended compliance filing.  For the reasons explained below, NETOs are wrong in contending that *Emera Maine* requires, as a matter of law, that their ROEs must immediately return to their pre-Opinion No. 531 levels.  In addition, we conclude that leaving in place the current ROEs will not make NETOs any worse off following the Commission's order on remand from *Emera Maine*.  That is because, on remand, the Commission will exercise its "broad remedial authority"[52] to make whatever ROE the Commission determines to be just and reasonable effective for the refund period and the entire period between Opinion No. 531-A and the date of the order on remand.  In short, NETOs will effectively receive the same ROEs regardless whether they return now to their pre-Opinion No. 531 levels.  An immediate return to NETOs' pre-Opinion No. 531 ROEs would, however, significantly complicate the process of implementing the Commission's order on remand.  In light of these complications and because NETOs will not be harmed financially by not immediately returning to their pre-Opinion No. 531 ROEs, we reject their compliance filing.

25.    We begin with NETOs' contention that the instant filing merely "document[s] the legal effect" of *Emera Maine*.  Insofar as NETOs contend that the effect of the D.C. Circuit decision was to return NETOs to their pre-Opinion No. 531 ROEs, we disagree.  As the Supreme Court explained in *Burlington Northern, Inc. v. United States*, which involved the substantively similar provisions of the Interstate Commerce Act, a "federal court['s] authority to reject . . . rate orders for whatever reason extends to the orders alone, and not to the rates themselves."[53] *Burlington Northern* involved the question

---

[52] *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 359 (D.C. Cir. 2017).

[53] *Burlington Northern, Inc. v. United States*, 459 U.S. 131, 141 (1982); *see also Consolidated Rail Corp. v. Nat'l Ass'n Recycling Indus., Inc.*, 449 U.S. 609, 612 (1981) ("The authority to determine when any particular rate should be implemented is a matter which Congress has placed squarely in the hands of the [Interstate Commerce] Commission.").

whether a court of appeals order vacating an agency rate increase could automatically restore the rate that existed prior to the vacated order.[54] The court of appeals decision reviewed by the Supreme Court in *Burlington Northern* did explicitly what NETOs contend the *Emera Maine* decision did implicitly: the court of appeals concluded that, by vacating an Interstate Commerce Commission order setting a new rate, it reinstated the pre-existing rate.[55]

26.     In reversing the court of appeals, the Supreme Court explained that, although a federal court has authority under the Interstate Commerce Act to vacate an order of the Commission, doing so "leave[s] in effect the rates filed under the Commission's authority pending the Commission's redetermination of a reasonable rate" on remand from the court.[56] In reaching that conclusion, the Court pointed to, among other things, the provision authorizing judicial review of Interstate Commerce Commission orders, which provided that "'the Court of Appeals has jurisdiction to make a judgment determining the validity of, and enjoining the *order* of the agency.'"[57] The Court explained that, under settled precedent, this authority over the "order" did not give a court the authority to determine what rate should apply as a result of its decision regarding that order.

27.     *Burlington Northern* disposes of NETOs' argument here. The FPA's judicial review provision is similar to the provision in *Burlington Northern*: It limits the courts of appeals to "affirming, modifying, or setting aside, in whole or in part, any . . . *order* of the Commission."[58] Thus, *Burlington Northern* indicates that when a federal court vacates a Commission order under the FPA, the court lacks authority to dictate the rate to be in effect as a result of that vacatur. Accordingly, the fact that the D.C. Circuit vacated Opinion No. 531 *et seq.* cannot automatically reinstate the ROEs that NETOs were permitted to recover prior to Opinion No. 531.

---

[54] *See Burlington Northern*, 459 U.S. at 137-38 (discussing the D.C. Circuit's order vacating the Interstate Commerce Commission order); *id.* at 138, 141 (explaining that the D.C. Circuit had concluded that its order vacating the Interstate Commerce Commission order "revived" the order that established the pre-existing rate).

[55] *Id.* at 137-138 (describing the decision below).

[56] *Id.* at 144.

[57] *Id.* at 141 (quoting 28 U.S.C. § 2349) (emphasis supplied; alterations omitted).

[58] 16 U.S.C § 825l (2012) (emphasis added).

28.    That conclusion does not mean that the Commission is not giving full effect to the D.C. Circuit's vacatur of Opinion No. 531 *et seq.* To the contrary, we recognize that, as a result of the Court's vacatur, those opinions cannot serve as precedent in other proceedings. That effect is significant. For example, in 2016, the Commission issued Opinion No. 551, which set the base ROE and ROE cap for transmission owners within the Midcontinent Independent System Operator.[59] In making its determinations in that proceeding, the Commission relied extensively on its conclusions in Opinion No. 531. Rehearing of Opinion No. 551 is now pending before the Commission. As a result of *Emera Maine*, the Commission will not be able to rely on Opinion No. 531 as precedent in addressing those rehearing requests, at least absent a further order on remand from *Emera Maine*.[60]

29.    In addition, we note that rejecting NETOs' compliance filing will not make NETOs any worse off following the Commission's order on remand from *Emera Maine*. That is because the Commission will, in its order on remand, exercise its "ample authority to remedy its own errors after being reversed in court"[61] to require refunds and/or surcharges as necessary to make the ROEs established in that order effective as of October 16, 2014—the effective date for the ROEs established in Opinion No. 531-A.

30.    The D.C. Circuit has explained repeatedly that the Commission possesses broad discretion to fashion an equitable remedy on remand when one of its decisions is vacated by court order.[62] That authority "emanates from an understanding that an 'agency, like a

---

[59] *Ass'n of Businesses Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 551, 156 FERC ¶ 61,234 (2016).

[60] *See Burlington Northern*, 459 U.S at 140 (explaining that, as a result of a court's vacatur, an agency may not rely on the now-vacated order in "'some subsequent proceeding'" (quoting *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 818-19 (1973))).

[61] *La. Pub. Serv. Comm'n v. FERC*, 866 F.3d 426, 431 (D.C. Cir. 2017).

[62] *Id.* at 431 n.6; *TNA*, 857 F.3d at 361 ("FERC enjoys broad authority when its past actions are determined to be wrong."); *Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947, 954-55 (D.C. Cir. 2016) ("[I]n examining the parallel provision [to FPA section 309] in the Natural Gas Act, the court concluded that provision unquestionably gives [the Commission] the authority, in fashioning remedies, to consider equitable principles, one of which is to regard as being done that which should have been done." (internal quotation marks omitted)); *Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1073-74 (D.C. Cir. 1992) (similar); *Office of Consumers' Counsel, State of Ohio v. FERC*, 826 F.2d 1136, 1139 (D.C. Cir. 1987) ("[W]hen the Commission has committed *(continued ...)*

court, can undo what is wrongfully done by virtue of its order'"[63] and it includes the ability "to regard as being done that which should have been done."[64]  Consistent with that understanding, the D.C. Circuit has concluded that the Commission may take action to correct its legal error even if that action might otherwise be impermissible under the Commission's authority pursuant to sections 205 or 206 of the FPA.[65]  Consequently, that authority encompasses the ability to order both refunds and surcharges[66] as necessary to "put[] the parties in the position they would have been in had the error not been made."[67]

31.    The D.C. Circuit has further explained that that authority is not only contemplated by the FPA, but necessary in order to give effect to judicial review.  If the Commission were unable to take the action to undo the effect of an order that is subsequently vacated,

legal error in a . . . case [involving the parallel provision to FPA section 206 in the Natural Gas Act] the proper remedy is one that puts the parties in the position they would have been in had the error not been made.").

[63] *TNA*, 857 F.3d at 361 (quoting *United Gas Improvement Co. v. Callery Props., Inc.,* 382 U.S. 223, 229 (1965)).

[64] *Xcel*, 815 F.3d at 954-55 (quoting *N. Natural Gas Co. v. FERC*, 785 F.2d 338, 341 (D.C. Cir. 1986)).

[65] *Clearinghouse*, 965 F.2d at 1073 ("Th[e] bias in the [Natural Gas Act] in favor of refunds and against retroactive surcharges, however, invokes the FERC's more limited authority in § 4 proceedings to suspend tariffs; it does not apply to the Commission's general discretionary authority to correct its legal errors."); *see also Pub. Utilities Comm'n of State of Cal. v. FERC*, 988 F.2d 154, 163 (D.C. Cir. 1993) ("[A]gency discretion 'is often at its 'zenith' when the challenged action relates to the fashioning of remedies.'" (quoting *Towns of Concord v. FERC*, 955 F.2d 67, 76 (D.C. Cir. 1992)).

[66] *See Xcel*, 815 F.3d at 955 ("[W]e are aware of [no case standing] for the proposition that the Commission's equitable authority does not encompass refunds as well as surcharges.").

[67] *Office of Consumers' Counsel*, 826 F.2d at 1139; *Tenn. Val. Mun. Gas Ass'n v. FERC*, 470 F.2d 446, 452 (D.C. Cir. 1972) ("If the policy of the Natural Gas Act  is not arbitrarily to be defeated by uncorrected Commission error, [the party harmed by that error] must be put in the same position that it would have occupied had the error not been made."); *see also Se. Michigan Gas Co. v. FERC*, 133 F.3d 34, 42 (D.C. Cir. 1998) (explaining that the Court had previously noted a "presumption in favor of retroactive remedies for erroneous FERC decisions").

"'regulated parties would be substantially and irreparably injured by FERC errors, and judicial review would be powerless to protect [both customers and public utilities] from much of the losses . . . incurred'" as a result of those errors.[68]

32.    Collectively, these cases indicate that the Commission has the authority to order refunds and/or surcharges as necessary to make parties whole when a Commission order is vacated in court.  Applied to the facts of this proceeding, that principle means that the Commission has authority to require refunds or surcharges as needed to make the ROEs set on remand from *Emera Maine* effective throughout the refund period and prospectively from the date of Opinion No. 531-A.  As noted, the Commission may, where appropriate, take such action as is necessary to "put[] the parties in the position they would have been in had the error not been made."[69]  Here the "error" in question was the Commission's issuance of an order setting NETOs' ROEs, which the D.C. Circuit subsequently vacated because the Commission did not satisfy its burden under either the first or the second prong of FPA section 206.[70]  To put the parties in the position that they would have been in but for that error, the Commission must order such refunds or surcharges as necessary to replace the rates set in the now-vacated order with the rates that the Commission ultimately determines to be just and reasonable in its order on remand.  After all, a contrary conclusion would frustrate judicial review as neither NETOs' claim that the Commission should have left in place their 11.14 percent ROE nor Customers' claim that the Commission should have set a lower ROE could be fully addressed, notwithstanding both parties' successful petitions for review.[71]

33.    NETOs' citation to *City of Anaheim* does not require a contrary conclusion.[72]  In finding that section 206 did not provide the Commission with authority to order surcharges in that case, *City of Anaheim* expressly distinguished the cases "recognizing FERC's power to remedy its own errors after being reversed in court."[73]  Indeed, the D.C. Circuit has twice in recent years recognized that *City of Anaheim* is inapplicable to

---

[68] *TNA*, 857 F.3d at 361 (quoting *Clearinghouse*, 965 F.2d at 1074-75 (alterations omitted)); *Pub. Utilities Comm'n*, 988 F.2d at 163 (similar).

[69] *Office of Consumers' Counsel*, 826 F.2d at 1139.

[70] *Emera Maine*, 854 F.3d at 26-28.

[71] *Cf. TNA*, 857 F.3d at 361; *Pub. Utilities Comm'n*, 988 F.2d at 163.

[72] NETOs Amended Compliance Filing at 6 n.18.

situations in which the Commission is acting retroactively to remedy its legal error.[74] As such, that case does not control the outcome here.

34.    We further find that, based on the circumstances in this proceeding, it would be appropriate to exercise our remedial authority to make the ROE we set in the order on remand effective as of the date of Opinion No. 531-A.  As we have recently explained, the "basic consideration" underlying the Commission's exercise of its equitable authority "is one of fairness."[75]  Here we find that, if the Commission on remand determines that NETOs' just and reasonable base ROE is a rate other than 10.57 percent or that the cap on NETOs' total ROE should be other than 11.74 percent, then Customers will have paid more than is just and reasonable or NETOs will have collected less than is just and reasonable.  Either way, the fair result will be to ensure that Customers effectively pay and NETOs effectively receive the just and reasonable rate.

35.    In addition, we note that, unlike proceedings involving issues such as cost allocation or rate design or the conditions under which an auction was conducted, there is relatively little concern here that the parties' behavior was distorted by the rates set in Opinion Nos. 531 *et seq.*[76]  That fact alleviates concerns we might otherwise have that Customers' actual use of transmission service would have been materially different under the rates to be set on remand.  Accordingly, we will exercise our discretion to order refunds or surcharges as appropriate.  As a result, our rejection of NETOs' amended compliance filing will not ultimately make NETOs any worse off than if they immediately return to their pre-Opinion No. 531 ROEs.

---

[73] *City of Anaheim*, 558 F.3d at 525.

[74] *La. Pub. Serv. Comm'n*, 866 F.3d at 431 n.6 ("*City of Anaheim* . . . does not control the outcome here because, in that case, FERC was not responding to a court decision when it imposed retroactive surcharges." (internal quotation marks omitted)); *Xcel*, 815 F.3d at 955 ("*City of Anaheim* [does not] speak[] to the Commission's power [to remedy legal error] under [FPA] section 309.").

[75] *La. Pub. Serv. Comm'n v. Entergy Corp.*, 155 FERC ¶ 61,120, at P 27 (2016) ("*Entergy*"); *see also Towns of Concord*, 955 F.2d at 75 (holding, in a case involving the Commission, that the equitable restitution of funds is appropriate "when money was obtained in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it" (internal quotation marks omitted)).

[76] *Entergy*, 155 FERC ¶ 61,120 at P 28 (citing *Commonwealth Ed.*, 25 FERC ¶ 61,323, at 61,732 (1983) and *Union Elec. Co.*, 64 FERC ¶ 61,355, at 63,468 (1993)).

USCA Case #20-1329    Document #1859120        Filed: 08/28/2020      Page 40 of 47

36.      However, an immediate return to NETOs' pre-Opinion No. 531 ROEs would significantly complicate the process of putting into effect whatever ROEs the Commission establishes on remand.  In particular, having multiple ROEs in effect during the period for which the Commission orders refunds or surcharges will make identifying and allocating the particular refunds or surcharges into a significantly more complex process.  That is because allocating the appropriate surcharges or refunds across the different types of transmission service provided by NETOs is a complicated and time-consuming task.  A need to consider multiple previous ROEs in performing that exercise will add unnecessary complexity to the Commission's task on remand—complexity that ultimately will not benefit any party.  In addition, we note that an immediate return to NETOs' pre-Opinion No. 531 ROEs followed by another potential change in their ROEs following the order on remand would lead to unnecessary and detrimental variability in rates.[77]  Therefore, in light of the foregoing considerations, and in exercise of our equitable discretion to fashion a remedy following *Emera Maine*, we reject NETOs' amended compliance filing and temporarily leave in place the ROEs set in Opinion No. 531-A, pending the Commission's order on remand.

The Commission orders:

NETOs' amended compliance filing is rejected, as discussed in the body of this order.

By the Commission.

( S E A L )


                                             Kimberly D. Bose,
                                             Secretary.

---

[77] *Cf. Promoting Transmission Investment Through Pricing Reform*, 141 FERC ¶ 61,129, at P 12 (2012) (discussing the desirability of promoting "rate stability for customers" by avoiding the "rate shock" that occurs as a result of large changes in their rates).

Document Contents(s)

ER15-414-002.DOCX....................................................1-18

## CERTIFICATE OF SERVICE

I, David Raskin, hereby certify that on August 28, 2020, I caused a true and correct copy of the foregoing petition for review to be served, by first-class U.S. mail, postage prepaid, on the following recipients:

Kimberly D. Bose
Secretary
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC  20426

Robert H. Solomon
Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC  20426
Robert.solomon@ferc.gov

In addition, I caused a courtesy copy of the foregoing petition to be sent via email to counsel for the Respondent, Robert H. Solomon and to the Secretary's Office at public.referenceroom@ferc.gov.

I also caused to be served a true and correct copy of the petition for review by email on all parties in the underlying administrative proceedings that are listed on the official service lists of the Federal Energy Regulatory Commission, as noted in the attached list.

 */s/ David B. Raskin*
David B. Raskin

Parties in the underlying administrative proceedings

Acadia Center
aboyd@acadiacenter.org

American Electric Power Service Corporation
djrogier@aep.com
ckduffy@aep.com

American Municipal Power, Inc.
ghull@amppartners.org
gnewell@jsslaw.com
lmcalister@amppartners.org
krothey@amppartners.org

Associated Industries of Massachusetts
rrio@aimnet.org

Brookfield Energy Marketing LP
nicolas.bosse@brookfieldrenewable.com

Casco Bay Energy Company, LLC
michelle.d.grant@dynegy.com

Central Maine Power Company
Catherine.McCarthy@bracewell.com
CMPRegAdmin@avangrid.com

Coalition of Midwest Transmission Customers
bweishaar@mcneeslaw.com
vkarandrikas@mcneeslaw.com

Connecticut Office of Attorney General
john.wright@ct.gov
seth.hollander@ct.gov

Connecticut Office of Consumer Counsel
andrew.minikowski@ct.gov

Connecticut Public Utilities Regulatory Authority
Scott.Strauss@spiegelmcd.com
david.pomper@spiegelmcd.com
eService@spiegelmcd.com


Connecticut Public Utilities Regulatory Authority
Clare.Kindall@ct.gov


Cooperative Energy
mrr@dwgp.com
adriana.velez-leon@dentons.com
nbellville@cooperativeenergy.com


Dynegy Marketing and Trade, LLC
michelle.d.grant@dynegy.com


Eastern Massachusetts Consumer-Owned Systems
jpc@duncanallen.com
amb@duncanallen.com
mikehorrigan@tmlp.com


Federal Energy Regulatory Commission
Frank.Kelly@ferc.gov
Roger.St.Vincent@Ferc.gov


George Jepsen, Attorney General for the State of Connecticut
john.wright@ct.gov
michael.wertheimer@ct.gov


Hoosier Energy Rural Electric Cooperative
cgoffinet@hepn.com
bcohen@mccarter.com
sbeeny@mccarter.com
pkimmel@pgklawoffice.com


Industrial Energy Consumer Group
dsipe@preti.com

ISO New England Inc.
mgonzalez@iso-ne.com
lmailesmith@iso-ne.com
LMorrison@iso-ne.com

Joint Consumer Advocates
rmork@oucc.IN.gov
jennifer.easler@oca.iowa.gov
larry.cook@ky.gov
john@liskeypllc.com
nancy.campbell@state.mn.us

Louisiana Public Service Commission
mfontham@stonepigman.com
dshelton@stonepigman.com
jswaim@stonepigman.com
melissa.watson@la.gov

Massachusetts Attorney General
christina.belew@state.ma.us
Cynthia.Holland@bpu.nj.gov

Maine Public Utilities Commission
lisa.fink@maine.gov
eric.j.bryant@maine.gov

Massachusetts Municipal Wholesale Electric Company
Scott.Strauss@spiegelmcd.com
jeffrey.schwarz@spiegelmcd.com
latif.nurani@spiegelmcd.com
eService@spiegelmcd.com
gwill@mmwec.org

National Rural Electric Cooperative Association
paul.breakman@nreca.coop

NEPOOL Industrial Customer Coalition
vkarandrikas@mcneeslaw.com
rweishaa@mwn.com

New England Conference of Public Utility Commissioners
lisa.fink@maine.gov

New England Power Company
seanatkins@dwt.com

New England Power Pool Participants Committee
ekrunge@daypitney.com
pmgerity@daypitney.com
jfagan@daypitney.com

New Hampshire Electric Cooperative, Inc.
Scott.Strauss@spiegelmcd.com
jeffrey.schwarz@spiegelmcd.com
latif.nurani@spiegelmcd.com
eService@spiegelmcd.com

New Hampshire Public Utilities Commission
george.mccluskey@puc.nh.gov
f.anne.ross@puc.nh.gov

New Jersey Board of Public Utilities
Alex.Moreau@law.njoag.gov

Northeast Utilities Service Company
phyllis.lemell@eversource.com

Public Service Electric and Gas Company
Matthew.Weissman@PSEG.com
Jodi.Moskowitz@PSEG.com

Southern California Edison Company
matthew.dwyer@sce.com
ferccaseadmin@sce.com
jeff.nelson@sce.com

The Energy Consortium
rrio@aimnet.org

The United Illuminating Company
sspina@morganlewis.com
linda.randell@uinet.com
jlowell@morganlewis.com
lmcallister@morganlewis.com

Vermont Department of Public Service
ed.mcnamara@vermont.gov
harvey.reiter@stinson.com
jmccaffrey@publicpower.org

Vermont Transco LLC
msciarrotta@velco.com
cowyang@velco.com